IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRYLE SMITH ET AL.,

    *Plaintiffs*,

    v.                            Civil Action No. ELH-14-3074

JUSTIN AITA ET AL.,

    *Defendants*.

**MEMORANDUM OPINION**

On September 30, 2014, plaintiffs Darryle Smith, Julian Washington, and Brian Louck filed suit against three defendants: Salisbury police officer Justin Aita, in his individual and official capacities; the Salisbury Police Department ("SPD"); and the City of Salisbury, Maryland ("City"). ECF 1. Plaintiffs amended their complaint on October 9, 2014 (ECF 11, "Amended Complaint"), and removed Brian Louck as a party. Plaintiffs allege, *inter alia*, that Aita stopped plaintiffs' vehicle for no reason, then held plaintiffs at gunpoint for forty minutes thereafter, and subjected them to a search and frisk, again for no reason, until finally releasing them with a written warning for failing to use a turn signal. *Id*. at 1.

The suit contains five counts. *Id*. Counts I, II, and III, lodged against all three defendants, pursuant to 42 U.S.C. § 1983, allege violations of plaintiffs' Constitutional rights. *Id*. at 6-10. Count IV alleges common law negligence (retention/entrustment) and is brought against the SPD and the City only. *Id*. at 10-11. Count V alleges intentional infliction of emotional distress ("IIED") and is brought against Aita and the SPD only. *Id*. at 12.

Defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 12 ("Motion"); ECF 12-1 ("Memo"). Plaintiffs oppose the Motion, *see* ECF 13 ("Opposition"), and

defendants have replied.  *See* ECF 14 ("Reply").  The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion in part, and deny the Motion in part.

### Discussion

Defendants do not seek dismissal of the entire complaint. Rather, they argue, first, that all claims against the SPD must be dismissed because, under Maryland law, it is not an entity capable of being sued.  Second, they argue that the negligence claim (Count IV) against the City must be dismissed because, under Maryland law, municipalities enjoy immunity against common law tort liability arising out of acts that are "governmental."  Third, they argue that plaintiffs' §1983 claims (Counts I, II, and III) against the City must be dismissed because plaintiffs have failed to allege sufficient facts to support a plausible claim for relief under *Monell v. Dept. of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).  Fourth, they argue the IIED claim (Count V) must be dismissed as against all defendants because it fails to allege facts sufficient to support a plausible claim for relief.  Fifth, and finally, they argue that plaintiffs' "Fifth Amendment claim" in Count III must be dismissed as against all defendants "because, generally speaking, the Fifth Amendment applies to the conduct of only the United States or a federal actor."  Memo at 4.

In their Opposition, plaintiffs do not oppose two of defendants' arguments.  First, they agree that "the City of Salisbury is the property party to be sued, rather than the Salisbury Police Department."  Opposition at 10; *see also*, *e.g.*, *Savage v. Mayor & City Council of Salisbury*, CCB-08-03200, 2009 WL 1119087, at *3 (D. Md. Apr. 22, 2009) ("The defendants contend, and the court agrees, that the Salisbury Police Department is not an entity amenable to suit, and the police department's parent municipal corporation — the city of Salisbury — is the proper

party.") (citing *Revene v. Charles County Comm's*, 882 F.2d 870, 874 (4th Cir. 1989); *Hines v. French*, 157 Md. App. 536, 573, 852 A.2d 1047, 1068 (2004) (explaining that local police departments are agents of the governing locality and should not be viewed as separate legal entities)). Second, plaintiffs concede that they "do not anticipate or intend to make a claim under the Fifth Amendment at this time." Opposition at 10. Accordingly, I shall dismiss all claims against the SPD. And, plaintiffs' Fifth Amendment claim, in Count III, is also dismissed, without prejudice.

Plaintiffs neither concede nor expressly oppose defendants' argument that the City is entitled to governmental immunity with respect to the negligence claim in Count IV. That claim appears to be predicated on Maryland law.

Defendants are correct that, under Maryland law, the City enjoys immunity against plaintiffs' nonconstitutional, common law negligence claim. In *DiPino v. Davis*, 354 Md. 18, 47-48, 729 A.2d 354, 369-70 (1999) (emphasis in original), the Maryland Court of Appeals said: "In this case, it is clear that [police officer] DiPino's conduct was not committed in any private or proprietary capacity. In her capacity as a City police officer, she was purporting to enforce the State criminal law. That is quintessentially governmental in nature. There is, therefore, no *common law* liability on the part of the City." *See also Hous. Auth. of Baltimore City v. Bennett*, 359 Md. 356, 358-61, 754 A.2d 367, 368-70 (2000) (discussing history of governmental immunity for local governments under Maryland law), *superseded on other grounds as recognized by Bd. of Cnty. Comm'rs. of St. Mary's Cnty. v. Marcas, LLC*, 415 Md. 676, 681, 4 A.3d 946, 951 (2010); *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 557-61, 65 A.3d 785, 790-92 (holding county enjoys immunity against claim for negligent hiring, retention, and

entrustment related to acts committed by police officer), *cert. denied*, 434 Md. 312, 75 A.3d 318 (2013).  Accordingly, plaintiffs' negligence claim (Count IV) is dismissed, with prejudice.

Plaintiffs oppose defendants' remaining arguments as to plaintiffs' § 1983 and IIED claims.  *See* Opposition at 5-7 (§ 1983); Opposition at 7-8 (IIED).

As to defendants' § 1983 arguments, it is well established that to prove municipal liability under §1983, a plaintiff "must ordinarily prove a number of prior incidents of police brutality, the nature of such incidents, and the municipal policymakers' reaction to them." *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319-20 (D. Md. 1991).  Consequently, where "a plaintiff has asserted claims against individual government employees as well as the municipal entity that employs and supervises these individuals," courts routinely bifurcate the claims against the  employees and the municipality, to permit resolution of the individual claims first.  *See*, *e.g.*, *Gray v. Kern*, WMN-13-02270, 2014 WL 1344275, at *1 (D. Md. Apr. 3, 2014) (citing cases).

Defendants do not dispute the sufficiency of plaintiffs' § 1983 claims against Aita. Accordingly, I will deny the Motion as to Counts I, II, and III with respect the City, without prejudice to the City's right to renew the Motion as the case progresses.  In the meantime, I will bifurcate plaintiffs' claims against Aita and the City, and stay plaintiffs' claims against the City until plaintiffs' claims against Aita have been resolved.  The stay is without prejudice to the right of any party to move to lift the stay.

As to plaintiffs' IIED claims (Count V), the Court will grant defendants' motion to dismiss, but will grant leave for plaintiffs to amend their complaint.

Generally speaking, claims for intentional infliction of emotional distress are disfavored and difficult to establish and, as such, are "rarely viable." *Respess v. Travelers Cas. & Sur. Co. of Am.,* 770 F. Supp. 2d 751, 757 (D. Md. 2011).   In order to prevail on a claim for IIED in Maryland, plaintiffs must show that (1) the defendants' conduct was intentional or reckless; (2) their conduct was extreme and outrageous; (3) there was a causal connection between the defendants' wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe. *Harris v. Jones,* 281 Md. 560, 566 380 A.2d 611, 614 (1977); *accord, e.g.*, *Caldor, Inc. v. Bowden,* 330 Md. 632, 641–42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer,* 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann,* 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010).

To show that the alleged distress was sufficiently "severe," plaintiffs "must plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Chin v. Wilhelm*, CCB-02-01551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006) (citing *Manikhi v. Mass Trans. Admin.,* 360 Md. 333, 367 758 A.2d 95, 113 (2000)).   These facts must give rise to the inference that plaintiffs were "severely emotionally disabled," 2006 WL 827343, at *9, *i.e.* that they were rendered "'unable to function,' 'unable to attend to necessary matters.'" *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1115 (1986) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59, 502 A.2d 1057, 1064 (1986)).

This standard is very difficult to meet.   In *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (quoting complaint), for example, the court dismissed plaintiff's IIED claim for failure to sufficiently allege severe distress, even though plaintiff alleged "'severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach.'"   The court held that the

severity "threshold is reached when a plaintiff's 'emotional distress is so severe as to have disrupted her ability to function on a daily basis.'" *Id.* (quoting *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F.Supp. 720, 750 (D. Md. 1996)).   Because the plaintiff in *Takacs* did not "allege that she has been unable to function on a daily basis," the court dismissed her claim.   473 F. Supp. 2d at 652.

Similarly, in *Manikhi*, 360 Md. at 370, 758 A.2d at 115, *supra*, the Maryland Court of Appeals affirmed dismissal of an IIED claim where the plaintiff alleged she was forced to seek medical treatment as a result of her emotional distress, but she did not state, "for example," "whether the medical treatment that she was forced to seek was of a psychological or physical nature, how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth."   Without such information, the court agreed that plaintiff had failed to "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury."   *Id.*

In their Opposition, plaintiffs argue that Aita's "act of wrongfully holding the Plaintiffs at gunpoint is what elevates this case past the difficult pleading standard … ."   Opposition at 7. Plaintiffs quote paragraphs 10 and 15 of the Amended Complaint (ECF 11) and also refer the Court to paragraph 41 of the Amended Complaint.   Paragraphs 10 and 15 state:

> 10. … All persons inside the car feared, for at least 10-15 minutes, that they were going to be shot and killed, despite the fact they had no idea why they were pulled over, or what Officer Aita and the Salisbury Police Department believed that they did wrong.

> ***

> 15. . . . As a result of Defendants' conduct, the Plaintiffs have suffered damages by being unlawfully held (including at gunpoint) against their will for an extended

period of time and have suffered and will continue to suffer severe emotional anguish.

Plaintiffs then assert:  "These allegations are sufficient to meet any pleading standard to survive a motion to dismiss."  Opposition at 7.  However, these bare allegations are not enough to nudge plaintiffs' "claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Even assuming the allegations are sufficient to show the first three elements of an IIED claim, plaintiffs have failed to allege facts sufficient to show a plausible claim that their distress was "severe," within the meaning of Maryland law.

Paragraph 10 alleges that plaintiffs suffered for "10-15 minutes," but does not describe the intensity of their suffering.  Paragraph 15 contains only conclusory allegations.  Paragraph 41 does not speak to the severity of plaintiffs' distress.  Therefore, the allegations fall far short of showing that the distress was severe enough to effectively disable plaintiffs, in the moment or any time thereafter.  Accordingly, plaintiffs' IIED claim (Count V) is dismissed, but with leave to amend within twenty-one days from the date of docketing of the accompanying Order.

Finally, I note that plaintiffs appear to be suing Aita in both his individual and official capacities.  ECF 11 ¶ 1 ("…Aita, who was acting individually and in his official capacity as a Salisbury Police Officer, …").  As defendants point out, Motion at 5 n.2, plaintiffs' suit against Aita in his official capacity is effectively "a suit against the City."  "If, as in this case, the government entity has received an opportunity to respond to a suit filed against one of its agents in his or her official capacity, the suit is in all respects, other than name, a suit against the entity." *Vincent v. Prince George's Cnty.*, 157 F. Supp. 2d 588, 595 (D. Md. 2001); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated

as a suit against the entity.").   Accordingly, because the City itself is already party to the suit, I

shall dismiss plaintiffs' claims against Aita in his official capacity, without prejudice.

### Conclusion

For the foregoing reasons, I will GRANT defendants' Motion (ECF 12) in part and

DENY defendants' Motion in part.  A separate Order follows, consistent with the Memorandum

Opinion.

Date: December 22, 2014 _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge