IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRYLE SMITH, ET AL.,

    *Plaintiffs,*

    v.

JUSTIN AITA, ET AL.,

    *Defendants.*

Civil Action No.: ELH-14-03074

## MEMORANDUM

On February 18, 2016, a jury in the District of Maryland returned a verdict in favor of defendant Justin Aita and against plaintiffs Darryle Smith and Julian Washington (ECF 63), in connection with plaintiffs' claim that Aita used excessive force during a traffic stop, when plaintiffs were college students.  Plaintiffs have filed a motion for new trial (ECF 64, the "Motion"), claiming undue prejudice created by defense counsel's improper reference, during his closing argument, to the recent shooting deaths of two deputy sheriffs in Harford County, Maryland. *Id.* at 1.  Defendant opposes the Motion.  ECF 65, "Opposition."  No reply has been filed, and the time to do so has expired. *See* Local Rule 105.2.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion.

## I.  Factual and Procedural Background

In an Amended Complaint (ECF 11) filed pursuant to 42 U.S.C. § 1983, plaintiffs alleged that on August 24, 2014, they "were profiled, stopped in their vehicle without cause, and held up at gunpoint" by Officer Aita, who then worked for the Salisbury Police Department ("SPD"). *Id.*

¶ 1.[1]   The Amended Complaint contains five claims: violation of plaintiffs' Fourth Amendment rights (Count I); use of excessive force (Count II); false arrest, in violation of the Fourth and Fifth Amendments (Count III); negligence as to the SPD and the City of Salisbury (the "City") (Count IV); and intentional infliction of emotional distress ("IIED") as to the SPD and Aita (Count V). *Id.* ¶¶ 16-42.

Defendants moved to dismiss the Amended Complaint (the "Motion to Dismiss"). ECF 12. By Memorandum Opinion (ECF 15) and Order (ECF 16) of December 22, 2014, I granted the Motion to Dismiss in part and denied it in part. In particular, I dismissed with prejudice all claims as to the SPD as well as Count IV (negligence). ECF 16 at 1. I also dismissed, without prejudice, plaintiffs' Fifth Amendment claim in Count III and all claims against Aita in his official capacity. *Id.* Further, I dismissed the IIED claim as to Aita. *Id.* Finally, I bifurcated and stayed the remaining § 1983 claims (*i.e.*, Counts I, II, and III) against Aita and the City. *Id.*

On February 10, 2016, six days before trial was scheduled to begin, two Harford County Sheriff's Deputies were shot and killed in Abingdon, Maryland. *See* Jean Marbella & Jessica Anderson, *Violent Past Emerges of Man who Shot, Killed Harford Deputies*, Baltimore Sun, Feb. 11, 2016, http://www.baltimoresun.com/news/maryland/bs-md-harford-shooting-thursday-20160211-story.html.[2]   The tragic deaths of the sheriff's deputies generated substantial media

---

[1] The Amended Complaint also named as defendants the SPD and the City of Salisbury. *Id.* at 1. The claims against the SPD were subsequently dismissed. *See* ECF 16. And, the claims against the City of Salisbury were bifurcated and stayed. *Id.*

[2] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot

coverage in the days preceding the trial.  *See, e.g., id.*  Notwithstanding the extensive media coverage surrounding the deputies' deaths, plaintiffs did not move to postpone the trial or express concern that the extensive media coverage would somehow prejudice the jury.  Nor was a motion in limine filed, to preclude any reference to the tragedy.

A three-day jury trial began on February 16, 2016.[3]  ECF 50; *see* ECF 52, ECF 53.  The thrust of the defense was that Officer Aita's actions on August 24, 2014, were justified by legitimate concerns for officer safety.

During closing argument, defense counsel referred to the recent shootings of the sheriff's deputies to illustrate the dangers that police officers face.  Plaintiffs' counsel promptly objected, and the court quickly held a bench conference, at which plaintiffs' counsel moved for a mistrial. I held the motion *sub curia*.  However, at the conclusion of the bench conference, I struck the comment of defense counsel and instructed the jury to disregard his remarks as to the sheriff's deputies.   After closing arguments, I instructed the jury as to the applicable law.   In my instructions, I reminded the jury that they were not to consider anything that was stricken from the record.

---

reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied,____* U.S. ____, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). And, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v. Town of Gilbert, Ariz.*, ____ U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)).

[3] No transcript of the trial is available.  Accordingly, I rely on my notes as to the proceedings.

As noted, on February 28, 2016, the jury returned a verdict in favor of Aita.  ECF 62. According to counsel, after the verdict, I denied plaintiffs' motion for a mistrial.  ECF 64 at 2; ECF 65 at 1.

On March 1, 2016, plaintiffs filed their Motion.  ECF 64.  The crux of plaintiffs' argument is that defense counsel's reference to the recent shooting deaths of the two sheriff's deputies was so "inflammatory" and "prejudicial" that a new trial is warranted, notwithstanding my curative instruction.  *Id.* at 2.  Plaintiffs assert, *id.* at 3: "The emotional nature of the comments cannot be forgotten or disregarded; a jury cannot be expected to be deductive and rational when exposed to such emotionally-charged material."  In his Opposition (ECF 65), Aita asserts, *id.* at 3: "Based upon the evidence presented, as well as the Court's curative instruction, the comment did not render the trial unfair . . . ."

## II.  Standard of Review

Fed. R. Civ. P. 59(a)(1)(A) provides, in relevant part:[4]  "The court may, on motion, grant a new trial on all or some of the issues--and to any party-- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  "Because 'every litigant is entitled to one fair trial, not two,' *Glassman Const. Co. v. United States ex rel. Clark–Fontana Paint Co.*, 421 F.2d 212, 215 (4th Cir. 1970), the decision of whether to grant or deny a motion for a new trial lies within the discretion of the district court, *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010).'"  *Wallace v. Poulos*, 861 F. Supp. 2d 587, 599 (D. Md. 2012); *see Butler v. Windsor*, ___ F. Supp. 3d. ___, PWG-13-883, 2015 WL 6449128, at *2 (D. Md. Oct. 22, 2015) ("Whether to grant a new trial 'rests within the sound discretion of the trial

---

[4]  As Aita notes, the Motion does not refer to Fed. R. Civ. P. 59.  ECF 65 at 4. Nonetheless, I construe the Motion as one filed pursuant to Fed. R. Civ. P. 59.

court but such discretion must not be arbitrarily exercised.'") (quoting *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th Cir. 1960)).

"The court must exercise its discretion to grant a new trial only if the verdict (1) is against the clear weight of the evidence, (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Wallace*, 861 F. Supp. 2d at 599 (citing *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001)); *see King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010); *Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996); *Windsor*, 2015 WL 6449128, at *2. "[S]uch a motion should be granted only when it 'is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.'" *Poulos*, 861 F. Supp. 2d at 599 (quoting *Pathways Psychosocial v. Town of Leonardtown, Md.,* 223 F. Supp. 2d 699, 706 (D. Md. 2002)). "[T]he burden of showing harmful error rests on the party seeking the new trial." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2803 at 60-61 (3d ed. 2012 & Apr. 2015 Supp.); *see Atkinson Warehousing & Distribution, Inc. v. Ecolab, Inc.*, 115 F. Supp. 2d 544, 546 (D. Md. 2000) ("The burden of showing error rests on the party seeking a rehearing on the merits."), *aff'd*, 15 F. App'x 160 (4th Cir. 2001).

"Courts have ordered new trials 'when opposing counsel's conduct causes prejudice to [the moving] party . . . thereby unfairly influencing [the] verdict.'" *E.E.O.C. v. McGee Bros. Co.*, No. 3:10-CV-142-FDW-DSC, 2011 WL 2119140, at *3 (W.D.N.C. May 26, 2011) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998)). "However, where 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'"

*McGee Bros. Co.*, 2011 WL 2119140, at *3 (quoting *Clarksville–Montgomery Cnty. School Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)).

According to the Fourth Circuit, "'while it may not always be simple for the members of a jury to obey' a curative instruction, there is an 'almost invariable assumption of the law that jurors follow their instructions . . . .'" *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 501 (4th Cir. 2001) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206–07 (1987)); *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) ("A jury is presumed to follow the instructions of the court."). Thus, the Fourth Circuit "defer[s] to the district court's finding" as to the effect of misconduct and a curative instruction on a jury. *Nichols*, 251 F.3d at 501; *see Prichard v. Kurucz*, 22 F. App'x 122, 126 (4th Cir. 2001) ("We defer to this assessment because the district court is in the best position to gauge the effects of an attorney's improper remarks and of its own remedial efforts.").

### III. Discussion

Plaintiffs contend that the trial was unfair because of defense counsel's reference during his closing argument to the shooting deaths of the sheriff's deputies. Notwithstanding my curative instruction to the jury, they argue that my curative instruction, although "firm," was "too little too late." ECF 64 at 3 n.1. I disagree.

The Third Circuit has observed that "the lapse of time between an error and a curative instruction can be significant." *United States v. Hakim*, 344 F.3d 324, 330 (3d Cir. 2003); *see McGee Bros. Co.*, 2011 WL 2119140, at *4 ("[T]he proximity in time to counsel's comment in which the instruction was given leaves little reason to doubt the effectiveness of the Court's

instruction.").    Here, I promptly struck defense counsel's comment and gave the jury a curative instruction.

Moreover, there is no basis to conclude that the jury did not follow my instruction. Accordingly, plaintiffs have not rebutted the "'almost invariable assumption of the law that jurors follow their instructions . . . .'"  *Nichols*, 251 F.3d at 501 (quoting *Richardson,* 481 U.S. at 206–07).

Even assuming, however, that my curative instruction was somehow insufficient, I am not persuaded that defense counsel's reference to the shooting deaths of the sheriff's deputies during closing arguments rendered the jury verdict unfair or resulted in a miscarriage of justice.

Plaintiffs could hardly have been blindsided by a defense theory that Ofc. Aita's conduct was justified because of his legitimate concerns for his safety.  Indeed, concern for officer safety is often implicated in the jurisprudence addressing interactions between the police and defendants.  *See, e.g., Terry v. Ohio*, 392 U.S. 1, 24 (1968) ("[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest"); *Michigan v. Long*, 463 U.S. 1032, 1048 (1983) ("[W]e have also expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed"); *Maryland v. Buie*, 494 U.S. 325, 333 (1990) ("In the instant case, there is an analogous interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack.").

In considering the issue of prejudice, plaintiffs' contention that defense counsel's comment prejudiced the jury is a bit myopic.  The reference to the deaths of the Harford County Sheriff's deputies was inappropriate, but should be considered against the backdrop of extensive media coverage about the deaths.  In other words, it is hard to conceive that the jurors were unaware of the tragedy.  It is equally hard to imagine that the jurors were unaware of the ongoing, highly publicized, and heated local and national debate concerning the use of excessive force by police against persons of color, such as the plaintiffs here.  This continuing national conversation about policing is particularly evident in this District, in the wake of the death of Freddie Gray in Baltimore in April 2015.  Gray sustained a fatal injury while in police custody, and criminal charges were subsequently filed against six Baltimore City Police Department officers.  Those charges remain pending in a Maryland court, and have also been the subject of extensive media coverage.

On balance, given the extensive media reporting on allegations of excessive use of force by police, the jury would likely have been aware of such matters.  These concerns would have lent support to plaintiffs' allegations as to improper use of force, so as to mitigate the isolated, improper remark of defense counsel.

Of course, these issues of public discourse are merely informative, but not dispositive.  I am persuaded that defense counsel's improper comment during his closing argument does not merit a new trial, because I struck the isolated comment immediately and delivered a prompt curative instruction to the jury.

**Conclusion**

For the foregoing reasons, I will deny the Motion.  A separate Order follows, consistent with this Memorandum.


Date: April 29, 2016                            _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge